# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| AARON ASELTINE, individually and on behalf of others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>BANK OF AMERICA, N.A.,<br><br>        Defendant. | Case No. 3:23-cv-00235-MOC-WCM |

## BANK OF AMERICA, N.A.'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

**MCGUIREWOODS LLP**
Bradley R. Kutrow
*bkutrow@mcguirewoods.com*
201 North Tryon Street
Suite 3000
Charlotte, NC 28202-2146
+1 704 343-2049

*Counsel for Defendant*
*Bank of America, N.A.*

**GOODWIN PROCTER LLP**
Laura A. Stoll (*pro hac vice*)
601 South Figueroa Street, 41st Floor
Los Angeles, California 90017
Tel.: +1 213 426 2500
Fax: +1 213 623 1673
*LStoll@goodwinlaw.com*

Viona J. Harris (*pro hac vice*)
1900 N Street, NW
Washington, DC 20036
Tel.: +1 202 346 4000
Fax: +1 202 346 4444
*VHarris@goodwinlaw.com*

*Counsel for Defendant*
*Bank of America, N.A.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND .............................................................................................. 2

LEGAL STANDARD.......................................................................................................... 4

I.     Fed. R. Civ. P. 12(b)(6): Failure to State a Claim ............................................... 4

II.    Choice of Law........................................................................................................ 5

ARGUMENT ...................................................................................................................... 6

I.     Plaintiff's Breach of Contract Claim (Count I) Should be Dismissed Because It Is Foreclosed by the Express Terms of the Account Agreements. ...................................... 6

II.    Plaintiff's Breach of the Covenant of Good Faith and Fair Dealing Claim (Count I) Fails for the Same Reasons as His Contract Claim and Cannot Survive as an Independent Claim. ...................................................................................................... 10

III.   Plaintiff's UDTPA Claim (Count II) Should Be Dismissed Because It Does Not Apply Here and, Even If It Did, Plaintiff Has Not Plausibly Alleged a Claim. ............. 12

      A.    Plaintiff's Alleged Injury Occurred Outside of North Carolina and so the UDTPA Does Not Apply to Plaintiff's Claim. ................................................... 12

      B.    Plaintiff Has Not Stated a Viable UDTPA Claim............................................... 14

IV.   Plaintiff Fails to State a Claim Under the UCL (Count III)............................................. 19

      A.    Plaintiff Has an Adequate Remedy at Law....................................................... 19

      B.    Plaintiff Has Not Properly Pled a Claim Under Any Prong of the UCL. ............ 20

           1.    Plaintiff's Claims Under the "Fraudulent," "Unlawful" and "Unfair" Prongs of the UCL Are Predicated on Nothing More than an Alleged Breach of Contract and so Must Be Dismissed. ................... 20

           2.    Plaintiff Fails to State a Claim Under Each Prong of the UCL for Additional Reasons. ............................................................................... 21

CONCLUSION..................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbate v. Wells Fargo Bank, N.A.*,
   2011 WL 13128742 (C.D. Cal. Apr. 25, 2011) ....................................................11

*Aerospace Mfg., Inc. v. Clive Merchant Grp., LLC*,
   No. 1:05CV00597, 2007 WL 2712920 (M.D.N.C. Sept. 14, 2007)........................5

*April Enters, Inc. v. KTTV*,
   147 Cal. App. 3d 805 (1983) ..............................................................................10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................................4

*Best v. Time Warner Inc.*,
   No. 1:11-CV-104, 2013 WL 66265 (W.D.N.C. Jan. 4, 2013)..............................14

*Bird v. First Alert, Inc.*,
   No. C 14–3585 PJH, 2014 WL 7248734 (N.D. Cal. 2014) ........................2, 14, 19

*Boland, Inc. v. Rolf C. Hagen (USA) Corp.*,
   685 F. Supp. 2d 1094 (E.D. Cal. 2010)...............................................................20

*Broussard v. Meineke Disc. Muffler Shops*,
   155 F.3d 331 (4th Cir. 1998) .........................................................................15, 16

*Bumpers v. Community Bank of Northern Virginia*,
   747 S.E.2d 220 (N.C. 2013)................................................................................19

*Caltex Plastics Inc. v. Lockheed Martin Corp.*,
   824 F.3d 1156 (9th Cir. 2016) ............................................................................20

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
   222 Cal. App. 3d 1371 (1990) ............................................................................11

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
   2 Cal. 4th 342 (1992) ...........................................................................................9

*Caturano v. Armchem Int'l Corp.*,
   No. 1:20-cv-00173-MOC-DCK, 2020 WL 6065303 (W.D.N.C. Oct. 14, 2020)
   (Cogburn, J.) ......................................................................................................13

*Chavez v. Carmax Auto Superstores California, LLC*,
   No. CV 13-02651 DMGA (JWX), 2013 WL 12474697 (C.D. Cal. Sept. 10,
   2013).   ...............................................................................................................24

*Clark v. BASF Salaried Employees' Pension Plan*,
329 F. Supp. 2d 694 (W.D.N.C. 2004), *aff'd as modified sub nom.*, 142 F.
App'x 659 (4th Cir. 2005) ................................................................................4

*Clemons v. E.S.A. Mgmt.*,
No. 3:18-CV-00014, 2018 WL 1594721 (W.D.N.C. Apr. 2, 2018) ...................12, 14

*Clifford v. Am. Int'l Specialty Lines Ins. Co.*,
No. 1:04-CV-486, 2005 WL 2313907 (M.D.N.C. Sept. 21, 2005) ..........................13

*Conder v. Home Sav. Of Am.*,
680 F. Supp. 2d 1168 (C.D. Cal. 2010) ................................................................20

*Cramer v. Ethicon, Inc.*,
No. 1:20-CV-95, 2021 WL 243872 (W.D.N.C. Jan. 25, 2021)..........................5, 12

*D C Custom Freight, LLC v. Tammy A. Ross & Associates, Inc.*,
848 S.E.2d 552 (N.C. App. Ct. 2020)....................................................................18

*Dang v. Samsung Elec. Co. Ltd.*,
No. 14-CV-00530-LHK, 2018 WL 6308738 (N.D. Cal. Dec. 3, 2018) .................25

*Davis v. Chase Home Fin., LLC*,
No. COA12-1246, 2013 WL 2407191 (N.C. App. Ct. 2013)....................................9

*Davis v. HSBC Bank Nevada, N.A.*,
691 F.3d 1152 (9th Cir. 2012) ........................................................................22, 25

*DFA Dairy Brands, LLC v. Primus Builders, Inc.*,
No. 5:21-CV-00026-KDB-DSC, 2021 WL 4233899 (W.D.N.C. Sept. 16,
2021) ......................................................................................................................5

*Duke Energy Florida, Inc. v. Westinghouse Elec. Co.*,
No. 3:14-cv-00141-MOC-DSC, 2016 WL 7423106 (W.D.N.C. Dec. 22, 2016)...................10

*Ellis v. La.-Pac. Corp.*,
699 F.3d 778 (4th Cir. 2012) ................................................................................15

*Fayetteville Investors v. Commercial Builders, Inc.*,
936 F.2d 1462 (4th Cir. 1991) ............................................................................4, 9

*Forever 21, Inc. v. Nat'l Stores Inc.*,
No. 2:12-CV-10807-ODW, 2014 WL 722030 (C.D. Cal. Feb. 24, 2014) .............20

*Gardner v. Safeco Ins. Co. of Am.*,
No. 14-cv-02024-JCS, 2014 WL 2568895 (N.D. Cal. Jun. 6, 2014)......................19

*Guerrero v. Bank of America, N.A.*,
   No. 3:21-cv-00333-RJC-DSC, 2023 WL 2712484 (W.D.N.C. Mar. 30, 2023) .....................15

*Guz v. Bechtel Nat'l, Inc.*,
   24 Cal. 4th 317 (2000) ................................................................................................10

*Guzman v. Diamond Candels, LLC*,
   No. 1:15cv422, 2016 WL 5679451 (M.D.N.C. Sept. 30, 2016).........................................13, 14

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) ...................................................................23

*Hancock v. Americo Fin. Life & Annuity Ins. Co.*,
   378 F. Supp. 3d 413 (E.D.N.C. 2019), *aff'd*, 799 F. App'x 179 (4th Cir. 2020).....................17

*Hassan v. Lenovo (United States), Inc.*,
   No. 5:18-CV-105, 2019 WL 123002 (E.D.N.C. Jan. 7, 2019) ................................................13

*Henryhand v. Dorel Juvenile Grp. Inc.*,
   No. CV 17-00180-SJO-(AGRX), 2017 WL 7806622 (C.D. Cal. Aug. 9, 2017) .............21, 22

*IQVIA, Inc. v. Circuit Clinical Solutions, Inc.*,
   No. 22CV7425, 2023 WL 129439 (N.C. Super. Jan. 6, 2023)................................................5

*Johnson v. J.P. Morgan Chase Nat. Corp. Servs., Inc.*,
   No. 3:13-CV-678-MOC-DSC, 2014 WL 4384023 (W.D.N.C. Aug. 5, 2014).......................11

*Jones v. Harrelson & Smith Contractors, LLC*,
   670 S.E.2d 242 (N.C. App. Ct. 2008), *aff'd*, 677 S.E.2d 453 (N.C. 2009)...........................15

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ...................................................................................22

*Keffer, Inc. v. Golden Eye Tech., LLC*,
   No. 3:23-CV-24-MOC, 2023 WL 2844371 (W.D.N.C. Apr. 7, 2023)...................................14

*Land v. Food Lion, LLC*,
   No. 3:09-CV-328, 2010 WL 11692296 (W.D.N.C. Sept. 2, 2010) ...........................................4

*LaFontaine v. Mitsubishi Motors No. Am., Inc*,
   No. SACV16943JVSFFMX, 2017 WL 8220705 (C.D. Cal. Feb. 23, 2017) .........................20

*Landucci v. State Farm Ins. Co.*,
   65 F. Supp. 3d 694 (N.D. Cal. 2014) .......................................................................11

*Langan v. United Servs. Auto. Ass'n*,
   69 F. Supp. 3d 965 (N.D. Cal. 2014) ...........................................................................6

*Lenk v. Monolithic Power Sys.*,
    No. 15-cv-01148-NC, 2015 WL 7429498 (N.D. Cal. Nov. 23, 2015) ...................................10

*Linear Tech. Corp. v. Applied Materials, Inc.*,
    152 Cal. App. 4th 115 (2007) ................................................................................21

*Malcolm v. JPMorgan Chase Bank, N.A.*,
    No. 09-4496-JF (PVT), 2010 WL 934252 (N.D. Cal. Mar. 15, 2010) ...................................11

*Martinez v. Nat'l Union Fire Ins. Co.*,
    911 F. Supp. 2d 331 (E.D.N.C. 2012)......................................................................14

*McAdam v. State Nat. Ins Co.*,
    No. 12cv1333 BTM (MDD), 2012 WL 4364655 (S.D. Cal. Sept. 24, 2012).........................19

*McDonalds Corp. v. Five Stars, Inc.*,
    No. COA10-346, 2010 WL 4608792 (N.C. Ct. App. Nov. 16, 2010) ...................................18

*McLaughlin v. Nationstar Mortg. LLC*,
    No. 1:18-cv-593, 2018 WL 4356754 (M.D.N.C. Sept. 12, 2018) ..............................................6

*In re Microsoft Corp. Antitrust Litig.*,
    274 F. Supp. 2d 747 (D. Md. 2003) ........................................................................20

*Moss v. Infinity Ins. Co.*,
    197 F. Supp. 3d 1191 (N.D. Cal. 2016) .............................................................19, 20

*Nikoopour v. Ocwen Loan Servicing, LLC*,
    No. 17cv2015-MMA (WVG), 2018 WL 3007918 (S.D. Cal. June 14, 2018) .................22, 23

*Niloy, Inc. v. Lowe's Cos.*,
    No. 5:16-cv-00029-RLV-DCK, 2017 WL 29338 (W.D.N.C. Jan. 3, 2017)..........................12

*Nobles v. Boyd*,
    No. 7:14-CV-214-FL, 2015 WL 2165962 (E.D.N.C. May 8, 2015) ......................................14

*Nuvo Research Inc. v. McGrath*,
    No. C 11-4006 SBA, 2012 WL 1965870 (N.D. Cal. May 31, 2012) ....................................21

*Orr v. U.S. EPA*,
    No. 1:19-cv-226-MOC-WCM, 2020 WL 2512985 (W.D.N.C. May 15, 2020).......................4

*P & L Dev., LLC v. Bionpharma, Inc.*,
    367 F. Supp. 3d 421 (M.D.N.C. 2019) .............................................................12, 13

*Patacsil v. Wilshire Credit Corp.*,
    2010 WL 500466 (E.D. Cal. Feb. 8, 2010)...............................................................22

*Peter Marco, LLC v. Banc of Am. Merch. Servs.*,
  No. 3:22-cv-00227-RJC-DSC, 2023 WL 2919306 (W.D.N.C. Mar. 9, 2023) ........................9

*Racine & Laramie, Ltd., Inc. v. Cal. Dep't of Parks & Recreation*,
  11 Cal. App. 4th 1026 (1992) ................................................11

*Rodrigues v. Alliant Credit Union*,
  No. 21-cv-01111-DMR, 2022 WL 2390999 (N.D. Cal. July 1, 2022)....................23

*Salas v. Toyota Motor Sales, U.S.A.*,
  No. CV 15-8629 FMO, 2016 WL 7486600 (C.D. Cal. Sept. 27, 2016) ...........................19, 20

*Sanders v. Countrywide Home Loans, Inc.*,
  No. 3:08-CV-448-RJC, 2009 WL 929093 (W.D.N.C. Apr. 2, 2009)................................10, 11

*Schertzer v. Bank of America, N.A.*,
  445 F. Supp. 3d 1058 (S.D. Cal. Mar. 4, 2020) .................................................22, 24

*Solum v. CertainTeed Corp.*,
  147 F. Supp. 3d 404 (E.D.N.C. 2015)........................................................17, 18, 24

*Songwooyarn Trading Co. v. Sox Eleven, Inc.*,
  213 N.C. App. 49 (N.C. App. 2011) ........................................16

*Stephens v. Wachovia Corp.*,
  No. 3:06cv246, 2008 WL 1820928 (W.D.N.C. Apr. 21, 2008) ......................6

*Sullivan v. Lab'y Corp. of Am. Holdings*,
  No. 1:17-CV-193, 2018 WL 1586471 (M.D.N.C. Mar. 28, 2018)........................16

*Suntrust Mortg., Inc. v. Busby*,
  651 F. Supp. 2d 472 (W.D.N.C. 2009) ..............................................16

*Sybersound Records, Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2008) ...........................................21

*United Dominion Indus., Inc. v. Overhead Door Corp.*,
  762 F. Supp. 126 (W.D.N.C. 1991) ..........................................12

*US LEC Commc'ns, Inc. v. Qwest Commc'ns Corp.*,
  No. 3:05-cv-00011, 2006 WL 1367383 (W.D.N.C. May 15, 2006)........................15

*Vogel v. Health Scis. Found., Inc.*,
  753 S.E.2d 742 (N.C. App. Ct. 2013) ..............................................10

*Wellness Grp., LLC v. King Bio, Inc.*,
  No. 1:12-CV-00281-MR-DLH, 2014 WL 1632930 (W.D.N.C. Apr. 24, 2014)....................10

*Withers v. BMW of North America, LLC,*
    560 F. Supp. 3d 1010 (W.D.N.C. 2021) ...............................................................................16

*XP Climate Control LLC v. Intermountain Electronics Inc.,*
    No. 5:22-cv-00096-KDB-DSC, 2023 WL 2596267 (W.D.N.C. Mar. 2, 2023) .....................14

*Zamora v. Solar,*
    No. 2:16-CV-01260-ODW-KS, 2016 WL 3512439 (C.D. Cal. June 27, 2016).......................9

**Statutes**

Cal. Bus. & Prof. Code § 17200 ............................................................................................19, 22

**Other Authorities**

12 C.F.R. § 1030.4 .............................................................................................................................23

Fed. R. Civ. P. 9(b) ...................................................................................................2, 16, 21, 22

Fed. R. Civ. P. Rule 10(c)...........................................................................................................4

Fed. R. Civ. P. 12(b)(6)................................................................................................................4

## INTRODUCTION

Plaintiff Aaron Aseltine ("Plaintiff") brings this putative class action challenging Bank of America, N.A.'s ("BANA's") assessment of a $15.00 fee for an incoming wire transfer to his checking account ("Incoming Wire Transfer Fee"). The crux of Plaintiff's claim is that BANA "totally failed to disclose Incoming Wire Transfer Fees in any contract document," that its account documents "promised that it would not charge Incoming Wire Transfer Fees at all," and that, as a result, Plaintiff and putative class members were "shocked" when they were assessed these fees "after no warning and no disclosure." ECF No. 1, Ex. A ("Compl.") ¶¶ 2-3, 15, 16. Plaintiff asserts claims for (1) breach of contract, (2) violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), and (3) violation of California's Unfair Competition Law ("UCL").

Despite Plaintiff's inflammatory rhetoric, the Complaint mischaracterizes the Account Agreements at issue.[1] The Account Agreements upon which Plaintiff relies show that BANA disclosed, in multiple provisions and documents, that incoming wire transfers are subject to fees. The Account Agreements further disclose that this fee can vary and notify accountholders how they can determine the exact amount of the fee for any particular transaction. None of Plaintiff's claims stand in light of these disclosures, and each fails for a myriad of other reasons.

---

[1] Plaintiff's relationship with BANA is governed in part by the Deposit Agreement and Disclosures ("Deposit Agreement") and accompanying Personal Schedule of Fees (collectively, the "Account Agreements"). Compl. ¶ 10, Ex. 1 at 2 ("This Deposit Agreement and Disclosures, the applicable Schedule of Fees, the signature card and other account opening documents for your account are part of the binding contract between you and us."). Plaintiff relies upon and attaches the Deposit Agreement and Personal Schedule of Fees, effective August 19, 2022, to the Complaint. Compl., Exs. 1-2. However, there are at least 11 other versions of the Deposit Agreement and 5 other versions of the Personal Schedule of Fees that were in effect during the relevant time period. These Deposit Agreements and Personal Schedule of Fees are identical to the August 19, 2022 versions with respect to the relevant language discussed herein. As such, BANA will refer to the attached August 19, 2022 Deposit Agreement and Personal Schedule of Fees when citing applicable language.

1

*First*, Plaintiff's breach of contract claim fails because there can be no claim for breach of contract without an alleged breach, and Plaintiff identifies no provision in any Account Agreement in which BANA promised that it would not assess the fees at issue. On the contrary, the Account Agreements expressly disclose and permit Incoming Wire Transfer Fees. Furthermore, Plaintiff's good faith and fair dealing claim—premised on the same allegations as the breach of contract claim—fails because it is not recognized as a standalone claim.

*Second*, Plaintiff's UDTPA claim fails because Plaintiff is a California resident whose agreements with BANA are governed by California law and whose alleged injury occurred only in California. As such, Plaintiff cannot assert a claim under North Carolina's UDTPA. Even if Plaintiff could assert a North Carolina UDTPA claim, this claim does not apply to contract-based claims absent substantial aggravating circumstances, and Plaintiff does not plead any such circumstances here. Moreover, Plaintiff has not identified any purported "misrepresentation" by BANA or alleged any reasonable reliance sufficient to state a UDTPA claim.

*Finally*, Plaintiff's California UCL claim fails because Plaintiff has an adequate remedy at law. In addition, Plaintiff has not pled sufficient facts to state a claim under the "fraudulent," "unlawful," or "unfair" prongs of the UCL because he pleads nothing more than a breach of contract, and fails to plead any purported misrepresentations with the requisite particularity under Fed. R. Civ. P. 9(b).

Accordingly, BANA requests dismissal of the Complaint in its entirety, with prejudice.

## **FACTUAL BACKGROUND**[2]

Plaintiff, a California resident, maintains a checking account with Bank of America. Compl. ¶ 8. Plaintiff alleges that he received an incoming wire transfer on October 18, 2022, and

---

[2] As it is required to do for purposes of this Motion, BANA accepts Plaintiff's factual allegations as true, but expressly reserves its right to contest those allegations if necessary at a later date.

was charged a corresponding $15.00 Incoming Wire Transfer Fee.  *Id.* ¶ 37.  Plaintiff admits that

BANA's Personal Schedule of Fees discloses the following:

> Wire Transfers, Incoming or Outgoing … Fee varies [] We may change the fees for wire transfers and drafts at any time. Visit a financial center or call us at the number on your statement for current fees.

*Id.* ¶ 17 (citing Compl., Ex. 2 at 14).

The Deposit Agreement attached to the Complaint further discloses that wire transfer fees

may be charged, stating:

> We may charge fees for sending or receiving a funds transfer. We may deduct our fees from your account or from the amount of the transfer. Other financial institutions involved in the funds transfer may also charge fees. For current fees, call us at the number for customer service on your statement or ask a financial center associate.

Compl., Ex. 1 at 67.

> You agree to pay for our services in accordance with the fees that apply to your account and your deposit relationship with us."  The *Personal Schedule of Fees* lists account fees that apply to our personal deposit accounts. … In addition to checking, savings and CD accounts we also offer many other services, *such as wire transfers*, cashier's checks and bond redemption. You can get current information about these services and the fees that apply to them at a financial center or by calling us at the customer service number shown on your account statement. We may occasionally list fees for some of these services in the Schedule of Fees. Fees for these services may vary from state to state. The fees you pay for these services are those charged by us in the state where we sell you the service. We may change these fees at any time without notice.

Compl., Ex. 1 at 17 (italics added).

Notwithstanding these disclosures, Plaintiff filed a Complaint against BANA on March 8,

2023, in the Superior Court for Mecklenburg County, North Carolina, alleging that BANA

"breach[ed] its account agreement with consumers" when it charged Incoming Wire Transfer Fees

and has an "unfair, deceptive, and unlawful practice of misleading personal accountholders into

3

paying wire transfer fees on incoming payments." Compl. ¶ 1. Plaintiff asserts claims for breach of contract and the covenant of good faith and fair dealing (Count I), violation of North Carolina's UDTPA (Count II), and, in the alternative, violations of California's UCL (Count III). *Id.* ¶¶ 53-92. Plaintiff seeks to certify a nationwide class of purportedly similarly-situated individuals with respect to Counts I and II, and, in the alternative, a California subclass with respect to Counts I and III. *Id.* ¶¶ 36-52.

## LEGAL STANDARD

### I. Fed. R. Civ. P. 12(b)(6): Failure to State a Claim

"To survive a motion to dismiss, Plaintiff's allegations must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Land v. Food Lion, LLC,* No. 3:09-CV-328, 2010 WL 11692296, at *2 (W.D.N.C. Sept. 2, 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In explaining this standard, the Supreme Court emphasized that a plaintiff's obligation to provide grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *accord Orr v. U.S. EPA*, No. 1:19-cv-226-MOC-WCM, 2020 WL 2512985, at *5 (W.D.N.C. May 15, 2020) ("A complaint fails to state a claim if it either asserts a legal theory that is not cognizable as a matter of law or fails to allege sufficient facts to support a cognizable legal claim."). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). In ruling on a motion to dismiss, "a court may consider matters of public record, items appearing in the record of the case, as well as exhibits attached to the complaint." *Clark v. BASF Salaried Employees' Pension Plan,* 329 F. Supp. 2d 694, 697 (W.D.N.C. 2004) (citation omitted), *aff'd as modified sub nom.*, 142 F. App'x 659 (4th Cir. 2005). "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c), Fed. R. Civ. P., the exhibit prevails." *Fayetteville Investors v.*

*Commercial Builders, Inc.*, 936 F.2d 1462, 1464 (4th Cir. 1991)).  In dismissing an action, a court need not grant leave to amend if it is clear that the complaint could not be saved by any amendment, or if such amendment would be futile.  *DFA Dairy Brands, LLC v. Primus Builders, Inc.*, No. 5:21-CV-00026-KDB-DSC, 2021 WL 4233899, at *2 (W.D.N.C. Sept. 16, 2021).

## II.     Choice of Law

Plaintiff purports to state claims under North Carolina law, but North Carolina law does not apply to Plaintiff's claims.  The Deposit Agreement that Plaintiff attaches to his Complaint has a Governing Law clause that states "[Plaintiff's] and [BANA's] rights and obligations under this Agreement, are governed by and interpreted according to federal law and the law of the state where [Plaintiff's] account is located. . . .  We ordinarily maintain [an] account at the financial center where we open [the] account."  Compl., Ex. 1 at 3.  Plaintiff alleges that he is a citizen and resident of California.  Compl. ¶ 8.

A federal court sitting in diversity must apply the choice-of-law rules of the forum state.  *See Cramer v. Ethicon, Inc.*, No. 1:20-CV-95, 2021 WL 243872, at *3 (W.D.N.C. Jan. 25, 2021) (citation omitted).  "Contractual choice of law provisions are generally binding in North Carolina so long as the parties had a reasonable basis for their choice and the law of the chosen State does not violate a fundamental policy of the state of otherwise applicable law."  *Aerospace Mfg., Inc. v. Clive Merchant Grp., LLC*, No. 1:05CV00597, 2007 WL 2712920, at *2 (M.D.N.C. Sept. 14, 2007) (citation omitted).  "Exceptions are rare," and a court will only set aside a party's contractual choice of law if (1) "the chosen state has no substantial relationship to the parties or the transaction" or (2) applying "the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue."  *IQVIA, Inc. v. Circuit Clinical Solutions, Inc.*, No. 22CV7425, 2023 WL

5

129439, at *2 (N.C. Super. Jan. 6, 2023) (citation omitted). As pled in the Complaint, all of Plaintiff's claims arise from his contractual relationship with BANA. Therefore, California law (and not North Carolina law) applies to Plaintiff's claims. *See Stephens v. Wachovia Corp.*, No. 3:06cv246, 2008 WL 1820928, at *3 (W.D.N.C. Apr. 21, 2008) (holding that there was "no basis for applying the law of North Carolina" where "the plain language of the parties' Deposit Agreement [] provide[d] that the applicable law is the law of the state where the Plaintiff's account was opened" and the account was opened in Alabama). Accordingly, as discussed in Section III below, Plaintiff cannot state a claim under North Carolina's UDTPA and Count II must be dismissed. The choice of law analysis does not require a different result with respect to Count I, and so BANA cites both North Carolina and California law to Count I for the purposes of this Motion.

## **ARGUMENT**

### I. **Plaintiff's Breach of Contract Claim (Count I) Should be Dismissed Because It Is Foreclosed by the Express Terms of the Account Agreements.**

Plaintiff's breach of contract claim rests entirely on the premise that BANA breached the terms of its Account Agreements when it charged an Incoming Wire Transfer Fee because BANA "never affirmatively discloses the existence or amount of is the Incoming Wire Transfer Fee" and the Account Agreements allegedly "promised [BANA] would not charge Incoming Wire Transfer Fees at all." Compl. ¶¶ 16, 27, 54-57. To plausibly state a breach of contract claim, a plaintiff must allege both "the material terms of a specific contract" and "which obligations a defendant allegedly breached." *Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 980 (N.D. Cal. 2014).[3] Plaintiff's breach of contract claim fundamentally fails because the Wire Transfer Fee is

---

[3] *See also McLaughlin v. Nationstar Mortg. LLC*, No. 1:18-cv-593, 2018 WL 4356754, at *2 (M.D.N.C. Sept. 12, 2018) (to state a breach of contract claim, a plaintiff must allege "the specific provisions breached" and "the facts constituting the breach") (citation omitted).

allowed under the express language of the Account Agreements.

Plaintiff does not dispute that the Account Agreements govern his claims, and he attaches them to the Complaint. Compl ¶ 10; *id.* Exs. 1, 2. The Account Agreements permit Incoming Wire Transfer Fees and disclose that "[w]e may charge fees for sending or receiving a funds transfer," that "[w]e may deduct our fees from your account or from the amount of the transfer," and that for "Wire Transfers, Incoming or Outgoing (U.S. or International)" the "Fee varies." Compl., Ex. 1 at 67; *id.* Ex. 2 at 13. This language makes clear that BANA may charge an Incoming Wire Transfer Fee. Moreover, the Deposit Agreement also explains the circumstances under which such fees may be charged. *See* Compl., Ex. 1 at 67 (disclosing that "[BANA] may charge fees for sending or receiving a funds transfer," that "[BANA] may deduct [such] fees from [Plaintiff's] account or from the amount of the transfer," and that "[o]ther financial institutions involved in the funds transfer may also charge fees"). BANA further directs accountholders to call customer service or visit a financial center to determine the exact amount of the fee because the amounts vary based on the type of wire transfer (e.g., incoming, outgoing, domestic, or international). *Id.*; Compl., Ex. 2 at 13.

In an attempt to circumvent this clear language, Plaintiff argues—without any basis or support—that various documents "promise" that BANA will not charge Incoming Wire Transfer Fees. Compl. ¶¶ 15, 16, 18-24. The very documents on which Plaintiff relies undermine this argument. First, Plaintiff alleges that because the "Personal Schedule of Fees nowhere states the amount of such a fee for an incoming wire or the circumstances in which such fees will be charged," BANA promised that no fee would be charged. Compl. ¶¶ 16, 18, 19. This allegation is baseless. Both the Personal Schedule of Fees and the Deposit Agreement, which is incorporated

by reference in the Personal Schedule of Fees,[4] state that a fee may be charged and direct Plaintiff to where he can determine the amount of the fee. *See, e.g.*, Compl., Ex. 2 at 14 ("We may change the fees for wire transfers and drafts at any time. Visit a financial center or call us at the number on your statement for current fees."); *id.*, Ex. 1 at 67 ("For current fees, call us at the number for customer service on your statement or ask a financial center associate."); *id.*, Ex. 1 at 17 ("[W]e also offer many other services, such as wire transfers….You can get current information about these services and the fees that apply to them at a financial center or by calling us at the customer service number shown on your account statement.").

In a further attempt to avoid the Account Agreements, Plaintiff alleges that two documents available on BANA's website, the Wire Transfer FAQs and the Online Banking Agreement, "promise" that no fees would be charged for incoming wire transfers. Compl. ¶¶ 20-24. Once again, Plaintiff identifies no provision to this effect. Instead, Plaintiff asserts that because the Online Banking Agreement "purports to list all forms of 'ACH and Wire transfers' and the fees associated" and omits incoming wire transfer fees, BANA has promised that "there will be no fees on incoming wire transfers." Compl. ¶¶ 20-22. This allegation fails at multiple turns. First, Plaintiff identifies no provision in the Online Banking Agreement stating that BANA has listed "all forms of" wire transfers and their associated fees. Nor can he because the Online Banking Agreement is limited to transactions that can be initiated by an accountholder via an online or mobile banking platform. Compl., Ex. 3 at Section 1 ("This Agreement governs your use of any *online or mobile banking services* maintained by Bank of America") (emphasis added). Thus, fees for transactions that can be initiated on those online and mobile platforms, such as incoming and outgoing ACH transactions, appear within the Online Banking Agreement, but fees for

---

[4] *See* Compl., Ex. 2 at 2 ("[Plaintiff's] account and deposit relationship with [BANA] are governed by this schedule of fees and the *Deposit Agreement and Disclosures*") (emphasis in original).

transactions that cannot be initiated on those platforms, such as incoming wire transfers, are omitted. *Id.* at Section 6. Likewise, the online Wire Transfer FAQs only provides information related to how to "*send* a domestic or international wire transfer." *Id.*, Ex. 4 ("Fees and limits may apply, depending on your account type and the type of wire. You will be able to review any fees and limits *before completing your wire transfer in Online Banking*.") (emphasis added). Second, as discussed above, BANA's Personal Schedule of Fees and Deposit Agreement—which are incorporated by reference in the Online Banking Agreement—expressly disclose that incoming wire transfers are subject to Incoming Wire Transfer Fees. *See* Compl., Ex. 3 at 2. Plaintiff's bald and unsupported conclusion to the contrary must therefore be disregarded. *See Fayetteville Investors*, 936 F.2d at 1464.

Because BANA's Account Documents expressly permit Incoming Wire Transfer Fees and Plaintiff identifies no contractual provision to the contrary, Plaintiff has not (and cannot) plausibly allege that any breach occurred. As such, Plaintiff's breach of contract claim must be dismissed. *See Zamora v. Solar*, No. 2:16-CV-01260-ODW-KS, 2016 WL 3512439, at *3 (C.D. Cal. June 27, 2016) ("The Court agrees with Defendant's plain reading of the Agreement, and joins its sister courts in the California system in holding that a party cannot breach a contract if its [conduct] was expressly permitted by the contract's terms."); *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 375 (1992) ("If defendants were given the right to do what they did by the express provisions of the contract there can be no breach.").[5]

_____

[5] *See also Peter Marco, LLC v. Banc of Am. Merch. Servs.*, No. 3:22-cv-00227-RJC-DSC, 2023 WL 2919306, at *5 (W.D.N.C. Mar. 9, 2023) (dismissing breach of contract claim where plaintiff "d[id] not identify a single provision of the Agreement that was allegedly breached," and "complain[ed] of conduct that is not prohibited by the Agreement," and so "none of the complained-of actions could have breached the Agreement") (citing *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)); *Davis v. Chase Home Fin., LLC*, No. COA12-1246, 2013 WL 2407191, at *3 (N.C. App. Ct. 2013) (affirming dismissal of breach of contract where

9

## II. Plaintiff's Breach of the Covenant of Good Faith and Fair Dealing Claim (Count I) Fails for the Same Reasons as His Contract Claim and Cannot Survive as an Independent Claim.

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing should be dismissed for the same reason. Plaintiff cannot use the implied covenant to override the express provisions in the Account Agreements allowing Incoming Wire Transfer Fees. *See Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349 (2000) (The covenant exists "to prevent one contracting party from unfairly frustrating the other party's right to receive *the benefits of the agreement actually made*.") (emphasis in original). BANA has a duty, and the right, under the implied covenant "to do everything that the contract presupposes that [it] will do." *April Enters, Inc. v. KTTV*, 147 Cal. App. 3d 805, 816 (1983) (citation omitted).[6]

The implied covenant claim also should be dismissed because the implied covenant does not exist independent from a contract. *Lenk v. Monolithic Power Sys.*, No. 15-cv-01148-NC, 2015 WL 7429498, at *3 (N.D. Cal. Nov. 23, 2015) ("the covenant of good faith and fair dealing cannot be endowed with an existence independent of its contractual underpinnings") (citation omitted).[7] Indeed, the implied covenant cannot "impose substantive duties or limits of on the contracting parties beyond those incorporated in the specific terms of their agreement. *Guz*, 24 Cal. 4th at

---

"Plaintiffs point to no provision" in the contract that prevented defendant from engaging in the alleged conduct); *Vogel v. Health Scis. Found., Inc.*, 753 S.E.2d 742 (N.C. App. Ct. 2013) (same).

[6] *See also Duke Energy Florida, Inc. v. Westinghouse Elec. Co.*, No. 3:14-cv-00141-MOC-DSC, 2016 WL 7423106, at *2 (W.D.N.C. Dec. 22, 2016) ("Courts will not apply an implied covenant of good faith and fair dealing to override the express terms of a contract.") (citation omitted); *Sanders v. Countrywide Home Loans, Inc.*, No. 3:08-CV-448-RJC, 2009 WL 929093, at *6 (W.D.N.C. Apr. 2, 2009) (same).

[7] *See also Wellness Grp., LLC v. King Bio, Inc.*, No. 1:12-CV-00281-MR-DLH, 2014 WL 1632930, at *5 (W.D.N.C. Apr. 24, 2014) ("When a claim for breach of the covenant of good faith and fair dealing is 'part and parcel' of a similar claim for breach of the express terms of the same contract, it should be dismissed as a freestanding claim and asserted as a theory in support of the claim for breach of contract.") (citation omitted).

349-50; *Racine & Laramie, Ltd., Inc. v. Cal. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1032 (1992) ("the implied covenant [of good faith and fair dealing] is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated in the contract"); *Abbate v. Wells Fargo Bank, N.A.*, 2011 WL 13128742, at *5 (C.D. Cal. Apr. 25, 2011) ("[I]t is universally recognized [that] the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract.").[8] Here, insofar as Plaintiff has not alleged a breach of contract (*see supra* Section I), he cannot state a claim for breach of the implied covenant of good faith and fair dealing.

Moreover, a claim for breach of the implied covenant of good faith and fair dealing is superfluous where, as here, it relies on and is duplicative of the same underlying conduct as a breach of contract claim. *See Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 716 (N.D. Cal. 2014) (when claims "cite the same underlying breach, the implied covenant cause of action will be superfluous with the contract cause of action") (citation omitted); *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) ("If the allegations [for breach of the implied covenant] do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated."); *Malcolm v. JPMorgan Chase Bank, N.A.*, No. 09-4496-JF (PVT), 2010 WL 934252, at *6 (N.D.

---

[8] *See also Sanders*, 2009 WL 929093, at *6 ("There simply can be no breach of contract where defendants do precisely what they contracted to do, and plaintiffs simply cannot substitute an implied duty for an express term of the contract."); *Johnson v. J.P. Morgan Chase Nat. Corp. Servs., Inc.*, No. 3:13-CV-678-MOC-DSC, 2014 WL 4384023, at *3 (W.D.N.C. Aug. 5, 2014), *report and recommendation adopted*, 2014 WL 4384024 (W.D.N.C. Sept. 3, 2014) ("The duty of good faith and fair dealing" cannot "impose upon the [defendant]" a duty that is not within the contract as "[s]uch a duty would allow the court to re-write the terms of a [contract]") (citation omitted).

11

Cal. Mar. 15, 2010) (same).[9]  Plaintiff's breach of the implied covenant of good faith and fair

dealing claim hinges on the same basic allegations of "assess[ing] Incoming Wire Transfer Fees"

Compl. ¶ 61.   Indeed, Plaintiff alleges both claims as a single "Count I" in his Complaint.

Accordingly, Plaintiff's implied covenant of good faith and fair dealing claim should be dismissed.

## III.    Plaintiff's UDTPA Claim (Count II) Should Be Dismissed Because It Does Not Apply Here and, Even If It Did, Plaintiff Has Not Plausibly Alleged a Claim.

### A.    Plaintiff's Alleged Injury Occurred Outside of North Carolina and so the UDTPA Does Not Apply to Plaintiff's Claim.

As a threshold matter, Plaintiff, a California resident, cannot state a claim under the

UDTPA for economic injury that occurred outside of North Carolina.  Dismissal is warranted for

this reason alone.  North Carolina courts apply the "lex loci test" to determine what law applies to

unfair and deceptive trade practices claims.  *See Clemons v. E.S.A. Mgmt*., No. 3:18-CV-00014,

2018 WL 1594721, at *4 (W.D.N.C. Apr. 2, 2018) ("[T]his Court, as well as federal courts in the

Middle and Eastern District of North Carolina, has traditionally applied the lex loci rule [to

UDTPA claims] rather than the most significant relationship test." (citations omitted)); *United*

*Dominion Indus., Inc. v. Overhead Door Corp*., 762 F. Supp. 126, 131 (W.D.N.C. 1991).  The lex

loci test dictates that the "law of the State where the last act occurred giving rise to [the plaintiff's]

injury governs [the claim]." *P & L Dev., LLC v. Bionpharma, Inc.*, 367 F. Supp. 3d 421, 429

(M.D.N.C. 2019) (quoting *United Virginia Bank v. Air-Lift Assocs., Inc.*, 79 N.C. App. 315, 339

S.E.2d 90, 94 (N.C. App. 1986)) (internal quotation marks omitted); *see also Cramer*, 2021 WL

243872, at *3 ("[Lex loci] approach provides that 'the state where the injury occurred is considered

the situs of the claim.'" (citation omitted)).  When a plaintiff suffers "commercial or financial

---

[9] *See also Niloy, Inc. v. Lowe's Cos.*, No. 5:16-cv-00029-RLV-DCK, 2017 WL 29338, at *7 (W.D.N.C. Jan. 3, 2017) ("[T]he weight of North Carolina authority holds that a claim for breach of the covenant of good faith and fair dealing based on facts identical to those supporting a breach of contract claim should not be pursued separately.").

injury rather than physical injury, courts often look at the location where the economic loss was felt." *Clifford v. Am. Int'l Specialty Lines Ins. Co.*, No. 1:04-CV-486, 2005 WL 2313907, at *8 (M.D.N.C. Sept. 21, 2005). "When the exact location of the injury is not clear, the 'location of a plaintiff's residence or place of business may be useful for determining the place of a plaintiff's injury.'" *Guzman v. Diamond Candels, LLC*, No. 1:15cv422, 2016 WL 5679451, at *3 (M.D.N.C. Sept. 30, 2016) (quoting *Harco Nat'l Ins. Co. v. Grant Thornton LLP*, 698 S.E.2d 719, 726 (N.C. App. 2010)). Here, Plaintiff's alleged injury occurred in California, the state where his account is located. Compl. ¶ 8.

Because California is the state where Plaintiff's account is located, where the alleged "last act" given rise to his claims—the receipt of the incoming wire transfer and assessment of the Incoming Wire Transfer Fee—occurred, and where Plaintiff was allegedly injured, under the lex loci test, California law applies to Plaintiff's claims.[10] Plaintiff thus may not bring a claim under

---

[10] Contrary to Plaintiff's assertion, the Court should apply the lex loci test, not the "most significant relationship" test (Compl. ¶¶ 68-70), when analyzing choice-of-law issues for the UDTPA claim. *See P & L Dev., LLC*, 367 F. Supp. 3d at 428 ("It is determined that the North Carolina Supreme Court would apply the lex loci test to determine which state's law applies to PLD's unfair and deceptive trade practices claim."). Additionally, "for claims sounding in contract," as is the case here, "the governing law is determined by lex loci contractus, or the law of the place where the contract was formed." *Caturano v. Armchem Int'l Corp.*, No. 1:20-cv-00173-MOC-DCK, 2020 WL 6065303, at *4 (W.D.N.C. Oct. 14, 2020) (Cogburn, J.).

Even if the most significant relationship test applied to the UDTPA claim, as Plaintiff alleges, the results would still be the same. Under the most significant relationship test, Plaintiff's claim would be governed by the law of the state "where the relationship between the parties was created and where it was centered." *Guzman*, 2016 WL 5679451, at *3 (citing *Jacobs v. Cent. Transp., Inc.*, 891 F. Supp. 1088, 1111 (E.D.N.C. 1995), *rev'd on other grounds*, 1996 WL 223688 (4th Cir. May 3, 1996)). Contrary to Plaintiff's assertion (Compl. ¶ 69), BANA's North Carolina headquarters does not give North Carolina a more significant relationship to this action than the state where Plaintiff's account is located and where Plaintiff experienced the alleged economic injury. *See Hassan v. Lenovo (United States), Inc.*, No. 5:18-CV-105, 2019 WL 123002, at *3 (E.D.N.C. Jan. 7, 2019) ("The fact that Lenovo's U.S. headquarters is in North Carolina is not enough to give North Carolina a more significant relationship with the underlying events that gave rise to the instant case."); *Guzman*, 2016 WL 5679451, at *3 (rejecting application of North

the UDTPA. *See Best v. Time Warner Inc.*, No. 1:11-CV-104, 2013 WL 66265, at \*5 (W.D.N.C. Jan. 4, 2013) ("[B]ecause Plaintiff's claim under the [UTPA] has no application to Californian transactions, it shall be dismissed."); *Nobles v. Boyd*, No. 7:14-CV-214-FL, 2015 WL 2165962, at \*12 (E.D.N.C. May 8, 2015) (dismissing UDTPA claim where "plaintiff suffered injury in California only"); *Clemons*, 2018 WL 1594451, at \*4 (dismissing UDTPA claim because plaintiff did not allege that he was injured in North Carolina); *Martinez v. Nat'l Union Fire Ins. Co.*, 911 F. Supp. 2d 331, 338 (E.D.N.C. 2012) (same); *Guzman*, 2016 WL 5679451, at \*5 (same). This Court should therefore dismiss Plaintiff's UDTPA claim.

## B. Plaintiff Has Not Stated a Viable UDTPA Claim.

Even if the UDTPA applied to Plaintiff's allegations regarding conduct and injury occurring outside of North Carolina (it does not), Plaintiff fails to state a claim under the UDTPA for multiple additional reasons.

*First*, Plaintiff's UDTPA claim, premised on the allegation that BANA "affirmatively and knowingly misrepresented its Incoming Wire Transfer Fees" (Compl. ¶ 71), is grounded entirely in contract and stems from the same facts as his breach of contract claim. As such, "the dispute boils down to a difference in contract interpretation," and so, "the economic loss rule bars Plaintiff's [] UDTPA claims." *Keffer, Inc. v. Golden Eye Tech., LLC*, No. 3:23-CV-24-MOC, 2023 WL 2844371, at \*2 (W.D.N.C. Apr. 7, 2023); *XP Climate Control LLC v. Intermountain Electronics Inc.*, No. 5:22-cv-00096-KDB-DSC, 2023 WL 2596267, at \*3-4 (W.D.N.C. Mar. 2, 2023) ("Courts in this Circuit have frequently dismissed negligent misrepresentation and fraud claims under the economic loss rule when they arise from contractual duties. … Actions that are

Carolina law to New York consumer because "New York's interest in protecting its own consumers outweighs North Carolina's interest in protecting foreign consumers" (citation omitted)). Based on the Deposit Agreement, California law applies. *See* Compl. Ex. 1, p. 3.

14

themselves alleged to be breaches of the parties' contracts cannot support a separate UDTPA claim.") (citations omitted), *report and recommendation adopted*, No. 2023 WL 2593008 (W.D.N.C. Mar. 21, 2023).

*Second*, given that Plaintiff's UDTPA claim is based entirely on his breach of contract claim, his UDTPA claim cannot survive because he has not alleged any "substantial aggravating circumstances" that rise above a mere contractual breach. *Ellis v. La.-Pac. Corp.*, 699 F.3d 778, 787 (4th Cir. 2012). "North Carolina law requires a showing of substantial aggravating circumstances," to counteract the common assertion of UDTPA claims as "boilerplate claim[s] in most every complaint based on a commercial or consumer transaction in North Carolina" due to the treble damages available under the statute. *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 347 (4th Cir. 1998) (citations omitted). Courts in North Carolina are "extremely hesitant to allow plaintiffs to attempt to manufacture" a UDTPA claim "out of facts that are properly alleged as a breach of contract claim." *Jones v. Harrelson & Smith Contractors, LLC*, 670 S.E.2d 242, 259 (N.C. App. Ct. 2008), *aff'd*, 677 S.E.2d 453 (N.C. 2009); *see also Guerrero v. Bank of America, N.A.*, No. 3:21-cv-00333-RJC-DSC, 2023 WL 2712484, at *6 (W.D.N.C. Mar. 30, 2023) (dismissing UDTPA claim where "the alleged contractual breach form[ed] the basis of the plaintiff's UDTPA claim") (citation omitted).

Here, Plaintiff's conclusory allegation that BANA "affirmatively and knowingly misrepresented its Incoming Wire Transfer Fees" by allegedly failing to disclose the fee (Compl. ¶¶ 71, 72), cannot convert what is a mere contract dispute into a UDTPA claim. *See US LEC Commc'ns, Inc. v. Qwest Commc'ns Corp.*, No. 3:05-cv-00011, 2006 WL 1367383, at *3 (W.D.N.C. May 15, 2006) (dismissing UDTPA claim and holding that "[c]onclusory claims of deception and misrepresentation do not convert these contract claims into a NCUDTPA claim.").

Indeed, even allegations of *intentional* breaches of contract do not qualify as substantial aggravating circumstances. *See Broussard*, 155 F.3d at 347 ("[A] mere breach of contract, *even if intentional*, is not sufficiently unfair or deceptive to sustain an action under [the UDTPA].") (emphasis added).

*Third*, even if Plaintiff had alleged substantial aggravating circumstances (he has not), his UDTPA claim still fails because he has not plausibly alleged any unfair or deceptive act or practice. To state a UDTPA claim, a plaintiff must allege, among other things, "conduct constituting an unfair or deceptive act or practice." *Suntrust Mortg., Inc. v. Busby*, 651 F. Supp. 2d 472, 486 (W.D.N.C. 2009). "Whether conduct constitutes an unfair or deceptive trade practice is a question of law for the court to decide." *Sullivan v. Lab'y Corp. of Am. Holdings*, No. 1:17-CV-193, 2018 WL 1586471, at *4 (M.D.N.C. Mar. 28, 2018); *Songwooyarn Trading Co. v. Sox Eleven, Inc.*, 213 N.C. App. 49, 56 (N.C. App. 2011). Fraud-based UDTPA claims are "subject to the Rule 9(b) heightened pleading standard, which requires that the plaintiff describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Withers v. BMW of North America, LLC*, 560 F. Supp. 3d 1010, 1019 (W.D.N.C. 2021) (quoting *U.S. ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455–56 (4th Cir. 2013)).

In support of his UDTPA claim, Plaintiff summarily alleges that BANA "misrepresented its Incoming Wire Transfer Fees." Compl. ¶ 71. But Plaintiff has not identified any actual misrepresentation by BANA relating to Incoming Wire Transfer Fees, let alone with the particularity required under Rule 9(b). Simply alleging the existence of a "misrepresentation" without more is the very sort of conclusory statement that Rule 9(b) bars. *See Withers*, 560 F. Supp. 3d at 1019. Nor could Plaintiff plausibly allege any such misrepresentation when BANA's

16

Account Documents expressly disclose that "[BANA] may charge fees for sending or receiving a funds transfer," and that for "Wire Transfers, Incoming or Outgoing (U.S. or International)" the "Fee varies." Compl. Ex. 1, at 67; *id.* Ex. 2, at 13. Since the Account Documents disclose the Incoming Wire Transfer Fees, BANA's conduct was not immoral, unethical, or oppressive (as is required for "unfair" conduct), and it did not have a tendency or capacity to mislead (as is required for "deceptive" conduct). Thus, Plaintiff cannot state a UDTPA claim. *See, e.g.*, *Hancock v. Americo Fin. Life & Annuity Ins. Co.*, 378 F. Supp. 3d 413, 433 (E.D.N.C. 2019), *aff'd*, 799 F. App'x 179 (4th Cir. 2020) ("plaintiff's claim under the UDTPA that defendant did not provide adequate warnings fails because the contract, by its plain terms, discloses its risks").

*Fourth*, even if Plaintiff had plausibly alleged a misrepresentation by BANA regarding Incoming Wire Transfer Fees (he has not), his claim must be dismissed because he fails to allege the requisite reasonable reliance. To state a UDTPA claim based on misrepresentation, "a plaintiff must plausibly allege actual reliance and *reasonable* reliance." *Solum v. CertainTeed Corp.*, 147 F. Supp. 3d 404, 411 (E.D.N.C. 2015) (citing *Caper Corp. v. Wells Fargo Bank, N.A.*, 578 F. App'x 276, 287 (4th Cir. 2014)) (italics added). "Under North Carolina law, reliance upon a representation is reasonable only when the recipient of the representation 'use[s] reasonable care to ascertain the truth of that representation.'" *Id.* (citing *Caper Corp.*, 578 F. App'x at 281, 287). Indeed, "when a plaintiff 'could have discovered the truth about the misrepresentation upon inquiry,' a plaintiff must 'allege that it was denied the opportunity to investigate or could not have learned the true facts by exercise of reasonable diligence.'" *Id.* (citing *Oberlin Capital v. Slavin*, 554 S.E.2d 840, 846 (N.C. App. Ct. 2001)). Moreover, "[u]nder North Carolina law, reliance is unreasonable as a matter of law where a plaintiff relies upon a representation 'directly contrary' to the express terms of a written contact." *Id.* At 411-412 (citing numerous cases).

17

Here, Plaintiff contends that he "reasonably relied on Bank of America's misrepresentations regarding its Incoming Wire Transfer Fees practices" because he "did [not] know [] he would be charged Incoming Wire Transfer Fees" and "would have arranged for an alternate form of payment" had he known. Compl. ¶ 72. These allegations are directly contrary to BANA's Account Agreements which expressly disclose that incoming wires are subject to Incoming Wire Transfer Fees. As such, Plaintiff's alleged "reliance" is unreasonable.

Furthermore, BANA's Account Agreements provide consumers with various methods to ascertain the exact fee that would be charged for any particular incoming wire transaction, for example, by directing accountholders to "[v]isit a financial center or call [BANA] … for current fees." Compl. Ex. 2, at 13; *id.* ¶ 28 (alleging that BANA directs "consumers to call and ask if or when these fees will be charged and the amount of such fees"). Despite being unequivocally provided with a means to discover the truth about Incoming Wire Transfer Fees, Plaintiff does not allege that he took any steps to inquire about this fee amount for any particular transaction or that he attempted to ascertain this information and was somehow denied the opportunity to investigate. Plaintiff therefore has not plausibly alleged any reasonable reliance on a purported "misrepresentation" by BANA, and his UDTPA claim must be dismissed. *See Solum*, 147 F. Supp at 143 (dismissing UDTPA claim where plaintiffs "have not (and cannot) allege that they were denied the opportunity to investigate or could not have learned the true facts by reasonable diligence"); *McDonalds Corp. v. Five Stars, Inc.*, No. COA10-346, 2010 WL 4608792, at *3-4 (N.C. Ct. App. Nov. 16, 2010) (affirming dismissal of UDTPA counterclaim where the defendant "fail[ed] to present any evidence that he diligently investigated" the alleged misrepresentations and therefore his alleged reliance was unreasonable); *D C Custom Freight, LLC v. Tammy A. Ross & Associates, Inc.*, 848 S.E.2d 552, 562 (N.C. App. Ct. 2020) (affirming summary judgment on

18

UDTPA claim where plaintiff "could have, at any time, examined the [at-issue] policy" through reasonable diligence but failed to do so); *see also Bumpers v. Community Bank of Northern Virginia*, 747 S.E.2d 220, 227 (N.C. 2013) ("Reliance is not reasonable where the plaintiff could have discovered the truth of the matter through reasonable diligence, but failed to investigate.") (citation omitted).

## IV.     Plaintiff Fails to State a Claim Under the UCL (Count III).

Plaintiff asserts claims under the "fraudulent," "unlawful" and "unfair," prongs of the UCL. Compl. at ¶¶ 82-92; *see also* Cal. Bus. & Prof. Code § 17200.  Plaintiff's UCL claim fails each prong because: (1) Plaintiff has an adequate remedy at law; and (2) Plaintiff does not plead facts sufficient to state a UCL claim.

### A.     Plaintiff Has an Adequate Remedy at Law.

The UCL is an equitable statute and as such, the only remedies available are the equitable remedies of restitution and injunctive relief.  *See, e.g., Salas v. Toyota Motor Sales, U.S.A.*, No. CV 15-8629 FMO, 2016 WL 7486600, at *13 (C.D. Cal. Sept. 27, 2016) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003)).  Under California law, a plaintiff has "no right to equitable relief or an equitable remedy when there is an adequate remedy at law." *Bird v. First Alert, Inc.*, No. C 14–3585 PJH, 2014 WL 7248734, at *5 (N.D. Cal. 2014).  Here, Plaintiff has an adequate remedy at law and Plaintiff does not (and cannot) allege otherwise.

Where, as here, Plaintiff "can seek money damages if []he prevails on claims for breach of contract or breach of the implied covenant of good faith and fair dealing, []he has an adequate remedy at law." *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1203 (N.D. Cal. 2016); *Gardner v. Safeco Ins. Co. of Am.*, No. 14-cv-02024-JCS, 2014 WL 2568895, at *7 (N.D. Cal. Jun. 6, 2014) (same); *McAdam v. State Nat. Ins Co.*, No. 12cv1333 BTM (MDD), 2012 WL 4364655, at *3

(S.D. Cal. Sept. 24, 2012) (same). This "is the case even if all of [Plaintiff's] non-UCL claims ultimately fail." *Moss*, 197 F. Supp. 3d at 1203.

Accordingly, the Court should dismiss Plaintiff's UCL claim with prejudice. *See LaFontaine*, 2017 WL 8220705, at *7 (dismissing UCL claim); *Salas*, 2016 WL 7486600, at *14 (also dismissing UCL claim).

### B. Plaintiff Has Not Properly Pled a Claim Under Any Prong of the UCL.

#### 1. Plaintiff's Claims Under the "Fraudulent," "Unlawful" and "Unfair" Prongs of the UCL Are Predicated on Nothing More than an Alleged Breach of Contract, and so, Must Be Dismissed.

Plaintiff's claims under the "fraudulent," "unlawful," and "unfair," prongs of the UCL should be dismissed because, as with Plaintiff's UDTPA claim, they are nothing more than breach of contract claims. Plaintiff's basic allegation under each prong is that BANA's Account Agreements failed to disclose Incoming Wire Transfer Fees and "promised" no Incoming Wire Transfer Fees would be assessed. Compl. ¶¶ 82-92. But it is well settled that a UCL claim requires something more than a breach of contract. *See, e.g., Caltex Plastics, Inc.*, 824 F.3d 1156, 1161 (9th Cir. 2016) (affirming dismissal of unfair and unlawful prong claims based on breaches of contract); *In re Microsoft Corp. Antitrust Litig.*, 274 F. Supp. 2d 747, 750 (D. Md. 2003) (dismissing UCL claim and holding that deeming "the UCL to include any breach of contract under the common law would give every plaintiff alleging breach of contract in a California court a corresponding cause of action for injunctive relief under the UCL").

Consistent with this long line of cases, a plaintiff may state a UCL claim premised on a breach of contract *only* "when the act is unfair, unlawful or fraudulent for some additional reason." *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1110 (E.D. Cal. 2010); *see also Conder v. Home Sav. Of Am.*, 680 F. Supp. 2d 1168, 1176 (C.D. Cal. 2010) (dismissing unfair prong claims based on a breach of contract); *Forever 21, Inc. v. Nat'l Stores Inc.*, No. 2:12-CV-

20

10807-ODW, 2014 WL 722030, at *5 (C.D. Cal. Feb. 24, 2014) (dismissing UCL claim where "the allegations are merely a repackaged version of . . . [a] defective breach-of-contract claim"); *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008) (same). Plaintiff cannot state a UCL claim where the harm allegedly suffered by Plaintiff is the same for a breach of contract. *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007) (sustaining demurrer to UCL claim where "the harm [plaintiff] suffered did result from contracts specifically with the plaintiff"); *see also Nuvo Research Inc. v. McGrath*, No. C 11-4006 SBA, 2012 WL 1965870, at *6 (N.D. Cal. May 31, 2012) (dismissing UCL claim that was "predicated solely on rights emanating from the [parties'] Agreement").

Plaintiff's Complaint alleges no facts to support his UCL claim beyond alleged breaches of the Account Agreements. *Compare* Compl. ¶ 57 ("Bank of America breached the terms of the Account Documents that form the contract with consumers by charging Incoming Wire Transfer Fees."), *with id.* ¶ 82 ("Bank of America's conduct violates the 'unfair,' 'unlawful,' and 'deceptive' prong insofar as Bank of America charges Incoming Wire Transfer Fees."). Plaintiff's UCL claim is thus based on the exact same conduct and injury underlying an alleged breach of contract—that BANA improperly assessed Incoming Wire Transfer Fees—and must be dismissed.

2.  Plaintiff Fails to State a Claim Under Each Prong of the UCL for Additional Reasons.

Dismissal is also warranted here because Plaintiff has not plausibly alleged that there was anything "fraudulent," "unlawful" or "unfair" about BANA's practice of charging Incoming Wire Transfer Fees.

As to the fraudulent prong, Plaintiff fails to plead any misrepresentation by BANA with particularity, as required under Rule 9(b) for fraud-based UCL claims. *Henryhand v. Dorel Juvenile Grp. Inc.*, No. CV 17-00180-SJO-(AGRX), 2017 WL 7806622, at *6 (C.D. Cal. Aug. 9,

21

2017); *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1125 (9th Cir. 2009).  Rule 9(b) requires, at a minimum, factual allegations as to "the time, place and nature of the alleged fraudulent activities … provided the plaintiff [also] sets forth what is false or misleading about a statement and why it is false."  *Patacsil v. Wilshire Credit Corp.*, 2010 WL 500466, at *5 (E.D. Cal. Feb. 8, 2010) (internal quotation marks omitted); *see also Henryhand*, 2017 WL 7806622, at *6 (dismissing fraud-based UCL claim because plaintiff failed to plead facts supporting an alleged affirmative misrepresentation).  Plaintiff, however, only summarily alleges that BANA "committed fraudulent business acts and practices in violation of [the UCL], when it affirmatively and knowingly misrepresented its Incoming Wire Transfer Fees policy."  Compl. ¶ 88.  This blanket allegation of a "misrepresentation" is patently insufficient under Rule 9(b).

Even if Plaintiff had pled the fraudulent claim with particularity (he has not), this claim must still be dismissed because Plaintiff does not (and cannot) plausibly plead that "members of the public are likely to be deceived" by BANA's practice of assessing Incoming Wire Transfer Fees in light of BANA's disclosures in its Account Agreements that such fees apply.  *See supra* 2-3; *Schertzer v. Bank of America, N.A.*, 445 F. Supp. 3d 1058, 1091 (S.D. Cal. Mar. 4, 2020) (dismissing claim where plaintiffs failed to sufficiently plead that the reasonable consumer would be deceived by the bank's disclosures); *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168-69 (9th Cir. 2012) (affirming dismissal of claim where "[n]o reasonable consumer would have been deceived … into thinking that no annual fee would be imposed").

As to the unlawful claim, Plaintiff cannot state a claim under any predicate law, and so this claim must be dismissed.  "Section 17200 'borrows' violations from other laws by making them independently actionable as unfair competitive practices."  *Nikoopour v. Ocwen Loan Servicing, LLC,* No. 17cv2015-MMA (WVG), 2018 WL 3007918, at *5 (S.D. Cal. June 14, 2018)

22

(citation omitted). "If a plaintiff cannot state a claim under the predicate law, however, [the UCL] claim also fails." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017) (citation omitted). Because Plaintiff's breach of contract claim fails for the reasons discussed in Section I *supra*, and Plaintiff predicates his UCL claim on these same allegations (*see* Compl. ¶ 82), his unlawfulness claim must be dismissed along with the breach of contract claim. *See Nikoopour*, 2018 WL 3007918, at *5 (dismissing UCL claim premised on failed breach of contract claim); *Hadley*, 243 F. Supp. 3d at 1094-95 (dismissing UCL claim where plaintiff failed to adequately allege any predicate violation).

Furthermore, to the extent Plaintiff purports to premise his unlawful claim on BANA's alleged violation of TISA, this claim fails because Plaintiff fails to plausibly state a claim for an underlying TISA violation. *See* Compl. ¶ 87 (alleging that BANA violates TISA because "the Account Documents fail to disclose either the amount of the Incoming Wire Transfer Fees or the conditions under which the Incoming Wire Transfer Fees are imposed"). Contrary to Plaintiff's assertions, TISA does not require the disclosure of an exact fee amount so long as the bank discloses "an explanation of how the fee will be determined" and "the conditions under which the fee may be imposed." 12 C.F.R. § 1030.4. Here, BANA makes those disclosures in its Account Agreements:

> We may charge fees for sending or receiving a funds transfer. We may deduct our fees from your account or from the amount of the transfer. Other financial institutions involved in the funds transfer may also charge fees. For current fees, call us at the number for customer service on your statement or ask a financial corner associate.

Compl., Ex. 1, at 67.

Plaintiff's UCL claim predicated on a purported TISA violation therefore fails. *See Rodrigues v. Alliant Credit Union*, No. 21-cv-01111-DMR, 2022 WL 2390999, at *14 (N.D. Cal.

23

July 1, 2022) (dismissing claim where "[plaintiff] has failed to state an underlying TISA violation that supports a UCL 'unlawfulness' claim").

Finally, as to the unfairness claim, Plaintiff fails to plausibly allege that BANA's conduct "offends an established public policy" or "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Chavez v. Carmax Auto Superstores California, LLC*, No. CV 13-02651 DMGA (JWX), 2013 WL 12474697, at *6 (C.D. Cal. Sept. 10, 2013). "[A]n act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." *Schertzer*, 445 F. Supp. 3d at 1091. The inquiry is governed by the "reasonable consumer test" which "requires that [a] plaintiff demonstrate more than the mere possibility that the provisions of the Agreement 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Id.* at 1086-87 (quoting *Ebner v. Fresh*, 838 F.3d 958, 965 (9th Cir. 2016)).

Here, Plaintiff's conclusory allegation that "Bank of America's unfair business practices as alleged herein are unlawful, immoral, unethical, oppressive, unscrupulous, unconscionable and/or substantially injurious" is nothing more than the mere "stringing together of a handful of adjectives to describe [defendant's] behavior" and does not state a claim. *Schertzer*, 445 F. Supp. 3d at 1091. Moreover, as demonstrated above, BANA's Account Agreements put Plaintiff on notice that incoming wire transfers are subject to fees, that this fee varies, and that accountholders can contact BANA to ascertain the exact fee that would apply to a particular transaction. *See supra* 2-3. Such a fact pattern cannot support a finding of unfairness under the UCL as a matter of law. *See, e.g.*, *Solum*, 445 F. Supp. 3d at 1087 (dismissing claim where "[b]ecause the possibility of being charged a balance inquiry fee has been disclosed, the UCL claim lacks merit" and

"[d]isclosure of this information would not lead the hypothetical reasonable consumer to conclude that no [such] fees would be charged"); *Davis*, 691 F.3d at 1170-71 (affirming dismissal where "nothing in the FAC supports the conclusion that the advertisements were against public policy, immoral, unethical, oppressive, or unscrupulous," the advertisements at issue warned that "other restrictions might apply," and the at-issue annual fee was disclosed during the application process).

Moreover, Plaintiff bases his allegations under the unfair prong on the same alleged conduct that underlies the fraudulent and unlawful prongs (Compl. ¶ 82), and so this claim fails along with the other two. *See Dang v. Samsung Elec. Co. Ltd.*, No. 14-CV-00530-LHK, 2018 WL 6308738, at *10 (N.D. Cal. Dec. 3, 2018) ("[W]here the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive.") (citing cases).

Because Plaintiff fails to state a claim under any prong of the UCL, Count III must be dismissed.

## **CONCLUSION**

For these reasons, BANA respectfully submits that this Court dismiss Plaintiff's Complaint in its entirety with prejudice.

This the 1st day of June, 2023.

MCGUIRE WOODS LLP

By: */s/ Bradley R. Kutrow*
  Bradley R. Kutrow
  N.C. State Bar No. 13851
  201 North Tryon Street
  Suite 3000
  Charlotte, NC 28202-2146
  Tel: + 1 704 343-2049
  *bkutrow@mcguirewoods.com*

GOODWIN PROCTER LLP

By: */s/ Laura A. Stoll*
  Laura A. Stoll (*pro hac vice*)
  601 South Figueroa St., 41st Floor
  Los Angeles, California 90017
  Tel.: +1 213 426 2500
  Fax: +1 213 623 1673
  *LStoll@goodwinlaw.com*

  Viona J. Harris (*pro hac vice*)
  1900 N Street, NW
  Washington, DC 20036
  Tel.: +1 202 346 4000
  Fax: +1 202 346 4444
  *VHarris@goodwinlaw.com*