UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:23-cv-235-MOC-WCM

| | | |
|---|---|---|
| **AARON ASELTINE,** individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) | ORDER |
| **BANK OF AMERICA, N.A.,** | ) ) ) | |
| Defendant. | ) | |

**THIS MATTER** comes before the Court on Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 9). Plaintiff has filed a response in opposition to the Motion, and Defendant has replied. (Doc. Nos. 17, 19). For the following reasons, Defendant's Motion is **DENIED**.

### I. BACKGROUND

Plaintiff, a California resident, maintains a checking account with Defendant Bank of America. (Doc. No. 1, Compl. at ¶ 35). On October 18, 2022, Plaintiff received an incoming wire transfer, and was charged a corresponding $15 Incoming Wire Transfer Fee by Defendant. (Id. at ¶ 36). Plaintiff alleges that he was surprised by the incoming transfer fee and was never provided with the opportunity to review or choose to incur the fee. (Id. at ¶ 37).

When Plaintiff established an account with Defendant, he signed a contract. Plaintiff contends this contract, when read in its entirety, communicates that no fee for incoming wire transfers would be charged. (Doc. No. 17 at 1). Accordingly, Plaintiff asserts three claims against Defendant: (1) breach of contract, (2) violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), and (3) violation of California's Unfair Competition Law ("UCL").

1

Defendant denies Plaintiff's allegations and moves to Dismiss Plaintiff's claims. (Doc. No. 9). Plaintiff has filed a response, arguing that the claims should not be dismissed. (Doc. No. 17). Defendant has filed a reply. (Doc. No. 19).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a motion may be dismissed for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all of the factual allegations in the Complaint and draw all reasonable inferences in the light most favorable to the plaintiff. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). However, to survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level," with the complaint having "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Id. at 679 (citations omitted).

## III. DISCUSSION

### A. Choice of Law

This Court has diversity jurisdiction over this matter and must apply the choice of law rules of North Carolina. See Cramer v. Ethicon, Inc., No. 1:20-CV-95, 2021 WL 243872, at *3

(W.D.N.C. Jan. 25, 2021) (citation omitted).

Plaintiff's contract with Defendant included a choice of law provision. The contract stipulates "[Plaintiff's] and [Defendant's] rights and obligations under this Agreement, are governed by and interpreted according to federal law and the law of the state where [Plaintiff's] account is located. . . . We ordinarily maintain [an] account at the financial center where we open [the] account." (Doc. No. 1, Compl., Ex. 1 at 3). There is no dispute that Plaintiff is a citizen and resident of California who opened his account in California. (Doc. No. 1, Compl. at ¶ 8). Therefore, the choice of law provision instructs the contract to be interpreted according to federal law and California state law.

"Contractual choice of law provisions are generally binding in North Carolina so long as the parties had a reasonable basis for their choice and the law of the chosen State does not violate a fundamental policy of the state of otherwise applicable law." Aerospace Mfg., Inc. v. Clive Merchant Grp., LLC, No. 1:05CV00597, 2007 WL 2712920, at *2 (M.D.N.C. Sept. 14, 2007) (citation omitted); See also Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 602 (4th Cir. 2004) ("[C]ontracting parties in North Carolina are entitled to agree that a particular jurisdiction's substantive law will govern their contract, and such a provision will generally be given effect."). Applying California state law is reasonable here (because Plaintiff is a resident of California who opened his account with Defendant in California) and is not contrary to a fundamental policy of North Carolina. So, this Court will apply California state law to Plaintiff's breach of contract claim.

North Carolina courts traditionally apply the "lex loci rule" to determine what law applies to a UDTPA claim. Clemons v. E.S.A. Mgmt., No. 318CV00014FDWDCK, 2018 WL 1594721, at *4 (W.D.N.C. Apr. 2, 2018) ("[T]his Court, as well as federal courts in the Middle and Eastern

3

District of North Carolina, has traditionally applied the lex loci rule rather than the most significant relationship test [to UDTPA claims]."). The lex loci rule dictates that "the law of the state where the injury to Plaintiff occurs governs the resolution of the substantive issues in controversy." Id., at *3. In other words, the law of state where the injury occurred applies.

Here, it is too early to determine where Plaintiff's injury occurred and therefore too early to determine what state's law applies. Defendant argues that Plaintiff's alleged UDTPA injury could only have occurred in California, and therefore California law must apply. However, North Carolina is the nerve center of Defendant's business activities, where many of its policies, decisions, and business practices are made. With the information available at this stage in litigation, it is plausible that the fee-charging practice that offended Plaintiff was established in North Carolina and not California. Therefore, it is plausible that Plaintiff suffered his injury in North Carolina. Due to this uncertainty, the Court will refrain from determining what law applies to Plaintiff's UDTPA claim until the record is further developed. Solomon v. ECL Group, LLC, No. 1:22-CV-526, 2023 WL 1359662, at *5 (M.D.N.C. Jan 31, 2023) ("A more definitive resolution of the choice of law question is deferred until 'after the parties have developed the factual evidence through the process of discovery,' and with briefing that addresses more specifically where the injury ascribed to each cause of action arose.") (citation omitted). Lastly, there is no dispute that California law applies to Plaintiff's UCL claim.

### B. Breach of Contract

Plaintiff's first claim against Defendant is for breach of contract. Under California law, a breach of contract claim "requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." CDF Firefighters v. Maldonado, 158 Cal. App. 4th

4

1226, 1239 (2008).

Plaintiff alleges that the account contract was a contract, Plaintiff performed the terms in the manner specified by the contract, but Defendant breached the contract when it assessed an Incoming Wire Transfer Fee, and Plaintiff suffered damages a result of that breach. Specifying the alleged breach, Plaintiff contends that the contract, when read as a whole, created an affirmative promise that Defendant would proactively disclose all account fees and only charge the fees disclosed. Hunt v. United Bank & Tr. Co., 210 Cal. 108, 115 (1930) ("It is a primary rule of interpretation that contracts must be construed as a whole, that is, from their four corners, and the intention of the parties is to be collected from the entire instrument and not detached portions thereof, it being necessary to consider all of the parts to determine the meaning of any particular part as well as of the whole."). Assessing an Incoming Wire Transfer Fees breached this promise because Defendant "listed fees for dozens of other account services including incoming and outgoing transfer, and never disclosed an Incoming Wire Transfer Fee." (Doc. No. 17 at 3).

In response, Defendant argues that the Incoming Wire Transfer Fee is allowed under the express language of the account contract, and Plaintiff's breach of contract claim must thereby be dismissed. (Doc. No. 10 at 6). Supporting this argument, Defendant points to a single sentence on page 67 of a 73-page contract which states, "We may charge fees for sending or receiving a funds transfer. We may deduct our fees from your account or from the amount of the transfer." (Compl., Ex. 1 at 67).

However, a warning that Incoming Wire Transfer Fees may–or may not–occur, does not annul a promise to disclose the existence and amount of Incoming Wire Transfer Fees or the circumstances in which they will be assessed. Taking Plaintiff's factual allegations as true, the

5

account contract stated on four separate occasions that Defendant would list all account fees being assessed, so that accountholders would know how to reasonably avoid them. (Doc. No. 17 at 3). In other words, Plaintiff alleges that Defendant promised to disclose all fees, stated it may charge fees for incoming wire transfers, disclosed the amount of every other type of fee it charges, but refrained from disclosing a fee for incoming wire transfers. Taking these factual assertions as true, it is reasonable to infer that Defendant failed to meet its obligations under the account contract. Accordingly, Plaintiff states a plausible claim that Defendant breached its affirmative promise to disclose all account fees—and to charge only those fees disclosed—when it assessed Incoming Wire Transfer Fees.

Defendant concedes that it never disclosed in writing the amount or circumstances under which Incoming Wire Transfer Fees would be charged. Instead, Defendant argues that customers like Plaintiff had the opportunity to "call customer service or visit a financial center" to determine whether an Incoming Wire Transfer Fee would be applied and the amount of that potential fee. (Doc. No. 10 at 7). An instruction to call customer service to ask about fees may conflict with Plaintiff's assertion that a promise existed to proactively disclose all fees. However, these potentially conflicting expectations for how information would be shared creates ambiguity that can be addressed at a later stage of litigation and does not warrant dismissal of Plaintiff's claim at this stage of litigation.

Therefore, accepting Plaintiff's factual allegations and drawing all reasonable inferences in the light most favorable to Plaintiff, Plaintiff states a plausible claim for breach of contract, and the claim will not be dismissed.

### C. **North Carolina Unfair and Deceptive Trade Practices Act**

Plaintiff's second claim is for violation of North Carolina's Unfair and Deceptive Trade

6

Practices Act ("UDTPA"). Defendant argues that the UDTPA claim should be dismissed for two reasons.

First, Defendant argues that a claim under the UDTPA, a North Carolina statute, can only be made if the Plaintiff is a North Carolina resident, Plaintiff's agreement with Defendant is governed by North Carolina law, or Plaintiff's alleged injury occurred in North Carolina. According to Defendant, because none of these conditions exist, the UDTPA claim should be dismissed. However, as previously discussed, with the information available at this stage in litigation, it would be premature to declare that Plaintiff's alleged injury did not take place in North Carolina. Defendant makes numerous policies and practice decisions in North Carolina, and it is plausible that Defendant's injurious fee charging arose from one of those decisions. Therefore, it cannot be established that Plaintiff's alleged injury occurred outside of North Carolina. Accordingly, the Court will not dismiss Plaintiff's UDTPA claim on these grounds.

Second, Defendant contends that Plaintiff has failed to articulate a viable UDTPA claim. This Court disagrees. To recover under the UDTPA, a Plaintiff must establish "(1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Nobel v. Foxmoor Grp., LLC, 380 N.C. 116, 120 (2022) (quoting Dalton v. Camp, 353 N.C. 647, 656 (2001)).

Here, Plaintiff alleges that Defendant engaged in the unfair and deceptive act of knowingly misrepresenting its Incoming Wire Transfer Fee policy to its customers. "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Walker v. Fleetwood Homes of N.C., Inc., 653 S.E.2d 393, 399 (N.C. 2007) (quoting Marshall v. Miller,

302 N.C. 539, 548 (1981)). "A practice is deceptive if it has the capacity or tendency to deceive." Id. Indicating that customers will not be charged an incoming wiring fee without notice, and then charging a fee without notice, as Plaintiff alleges, has the tendency to deceive and substantially injures consumers. Completing the elements of a UDTPA claim, charging a commercial fee is clearly part of and affecting commerce, and Plaintiff was charged the fee, thereby financially injuring him.

While the UDTPA does not apply "to an individual who merely breaches a contract." Bumpers v. Cmty. Bank of N. Virginia, 367 N.C. 81, 87–88 (2013), "[a] plaintiff may bring a UDTPA claim where a defendant's breach of contract involved deception and egregious and aggravating circumstances." Viza Elecs., LLC v. Paradigm Clinical Rsch. Inst., Inc., No. 3:22-CV-49-MOC-DCK, 2022 WL 4459836, at *6 (W.D.N.C. Sept. 23, 2022) (citing S. Atl. Ltd. P'ship of Tenn., L.P. v. Riese, 284 F.3d 518, 535 (4th Cir. 2002)) (additional citations omitted). A breaching party commits an egregious or aggravated breach when it acts deceptively "in the circumstances of [the contract's] breach" such as the formation of the contract or in the circumstances of the breach. See Software Pricing Partners, LLC v. Geisman, No. 3:19-cv-00195-RJC-DCK, 2020 WL 3249984, at *10 (W.D.N.C. June 16, 2020) (quoting SciGrip, Inc. v. Osae, 838 S.E.2d 334, 347 (N.C. 2020)); See also Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989). Plaintiff's allegations describe an egregious or aggravated breach, because Plaintiff describes a deceptive assurance at the root of contract–the promise that all fees would be affirmatively disclosed. Therefore, Plaintiff's UDTPA claim is not duplicative of his claim for breach of contract.

Lastly, a claim under the UDTPA requires the plaintiff to "demonstrate reliance on the misrepresentation in order to show the necessary proximate cause." Bumpers, 367 N.C. at 88;

See also Solum v. Certainteed Corp., 147 F. Supp. 3d 404, 411 (E.D.N.C. 2015) ("When the alleged UDTPA violation is a misrepresentation, a plaintiff must prove detrimental reliance on the alleged misrepresentation to satisfy the proximate cause requirement."). Therefore, to withstand a motion to dismiss, Plaintiff must allege (1) actual reliance and (2) reasonable reliance. See, e.g., Caper Corp. v. Wells Fargo Bank, N.A., 578 F. App'x 276, 287 (4th Cir. 2014). At the pleading stage, when a plaintiff "could have discovered the truth about the misrepresentation upon inquiry," a plaintiff must "allege that it was denied the opportunity to investigate or could not have learned the true facts by exercise of reasonable diligence." Id. (quoting Pinney v. State Farm Mut. Ins. Co., 146 N.C. App. 248, 256 (2001)).

Defendant argues that Plaintiff has failed to allege reasonable reliance, because the contract notified Plaintiff that a fee may be charged for an incoming transfer, and because Plaintiff could have called Defendant and asked whether his incoming wire transfer would be accompanied by a fee. But reasonable diligence under these circumstances would not necessarily reveal the Incoming Wire Charge Fee. Plaintiff relied on an alleged promise that all fees would be affirmatively announced, and a notification that a fee *may* be charged does not warn a customer that a fee *will* be charged. Moreover, a plaintiff cannot reasonably be expected to contract a bank with every impending wire charge to see if a fee has sprung into existence. With Plaintiff's level of inquiry appearing reasonable at the pleading stage, he has alleged the requisite reliance to survive a motion to dismiss.

Because Plaintiff has alleged a viable UDTPA claim, the claim is not duplicative of his breach of contract claim, and Plaintiff has alleged reasonable reliance, Plaintiff's UDTPA claim will not be dismissed.

### D. California Unfair Competition Law

Plaintiff's third claim is for violation of California's Unfair Competition Law ("UCL"). To state a UCL claim, "a plaintiff must show either an (1) 'unlawful, unfair, or fraudulent business act or practice,' or (2) 'unfair, deceptive, untrue or misleading advertising.'" Kemp v. Wells Fargo Bank, N.A., No. 17-CV-01259-MEJ, 2017 WL 4805567, at *15 (N.D. Cal. Oct. 25, 2017) (quoting Lippett v. Raymond James Fin. Servs., 340 F.3d 1033, 1043 (9th Cir. 2003)).

Here Plaintiff alleges that Defendant made multiple deceptive misrepresentations and misleading statements regarding Incoming Wire Transfer fees. These allegations suggest that Defendant engaged in conduct "likely to deceive" a "reasonable consumer," and therefore the conduct was fraudulent. Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008) (explaining that the UCL prohibits "not only advertising which is false, but also advertising which [,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public") (quotation omitted).

Defendant argues that Plaintiff's UCL claim is duplicative of his breach of contract claims. But, as explained above, the alleged deceptive conduct distinguishes Plaintiff's UCL claim from his breach of contract claim. Defendant alternatively argues Plaintiff cannot bring a UCL claim because his other claims provide an adequate remedy at law. The UCL is an equitable statute, and therefore the only remedies available under the statute are the equitable remedies of restitution and injunctive relief. See, e.g., Salas v. Toyota Motor Sales, U.S.A., No. CV 15-8629 FMO, 2016 WL 7486600, at *13 (C.D. Cal. Sept. 27, 2016) (citing Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1144 (2003)). Under California law, a plaintiff has "no right to equitable relief or an equitable remedy when there is an adequate remedy at law." Bird v. First Alert, Inc., No. C 14–3585 PJH, 2014 WL 7248734, at *5 (N.D. Cal. 2014).

But, here, Plaintiff does not have an adequate remedy at law and Plaintiff can therefore

10

pursue an UCL claim. Plaintiff not only seeks monetary damages for the fees he has incurred, but also an injunction of Defendant's alleged deceptive conduct, in order to prevent future harm. Because the legal remedy of damages would not provide injunctive relief, Plaintiff is entitled to pursue a claim under the UCL.

In sum, because Plaintiff has properly pled a UCL claim, that claim is not duplicative of his breach of contract claim, and pursuit of that claim is not precluded by an already existing adequate remedy of law, Plaintiff's UCL claim will not be dismissed.

## IV. CONCLUSION

Accepting Plaintiff's factual allegations as true and drawing all reasonable inferences in the light most favorable to Plaintiff, Plaintiff has alleged viable breach of contract, UDTPA, and UCL claims. Accordingly, there is no reason to dismiss Plaintiff's claims at this stage, and Defendant's Motion to Dismiss (Doc. No. 9) is **DENIED**.

**IT IS, THEREFORE, ORDERED** that:

1. The Motion to Dismiss for Failure to State a Claim, (Doc. No. 9) is **DENIED**.

Signed: September 26, 2023

Max O. Cogburn Jr
United States District Judge